JUDGE FRANK MONTALVO

**FILED**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

JUN 0 3 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| **ERIK SALAIZ,** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**AMERICAN CONSUMER CREDIT** §<br>**COUNSELING, INC.,** a Massachusetts §<br>Corporation, **TR SIMPSON ENTERPRISES** §<br>**LLC,** a Florida Limited Liability Company, and §<br>**GROUNDED X INC**, a Florida Corporation §<br>§<br>**Defendants.** §<br>§ | **EP22CV0194** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Erik Salaiz, brings this action against Defendants, AMERICAN CONSUMER

CREDIT COUNSELING, INC., a Massachusetts Corporation, TR SIMPSON ENTERPRISES

LLC, a Florida Limited Liability Company, and GROUNDED X INC, a Florida Corporation,

and alleges based on personal knowledge and information, and belief, as follows:

### Preliminary Statement

1.      As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am.*

*Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants placed illegal telemarketing

robocalls calls to him in violation of the TCPA.

3.      Defendants offer credit card "debt relief" services to consumers.  As part of marketing their services, Defendants hired and authorized telemarketers to place illegal robocalls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS") that started with a prerecorded voice message.

4.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## PARTIES

5.      Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of Texas, and was present in the Western District of Texas during all calls at issue in this case.

6.      Defendant AMERICAN CONSUMER CREDIT COUNSELING, INC. ("American") is a corporation organized and existing under the laws of Massachusetts with a principal address of 130 Rumford Ave., Ste 202, Newton, MA, 02466 and can be served via its registered agent, Registered Agent Solutions, Inc, at Corporate Center One 5301 Southwest Parkway, Suite 400, Austin, Texas 78735.

7.      Defendant TR SIMPSON ENTERPRISES LLC ("TR Simpson") is a limited liability company organized and existing under the laws of Florida with a principal address at 910 Spinnaker Way, Kissimmee, Florida 34746 and can be served via its registered agent, Timothy R. Simpson at 1415 W. Oak Street 432116, Kissimmee, Florida 34741.

8.      Defendant GROUNDED X INC ("Grounded X") is a corporation organized and existing under the laws of Florida with a principal address at 785 Big Tree Drive #101, Longwood, Florida 32750 and can be served via its registered agent, Joo Y. Han at 1170 Tree Swallow Drive, Winter Springs, Florida 32708.

2

9.      Defendants AMERICAN CONSUMER CREDIT COUNSELING, INC., TR SIMPSON

ENTERPRISES LLC, and GROUNDED X INC are hereinafter collectively referred together as

"Defendants".

### JURISDICTION AND VENUE:

10.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

11.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff, and adds little

complexity to the case, so it is unlikely to predominate over the TCPA claims.

12.     This Court has personal jurisdiction over Defendants because they conduct business in

this District and in the State of Texas and because the events giving rise to this lawsuit occurred

in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants

regularly conduct business in the State of Texas and in this District, and because the wrongful

conduct giving rise to this case occurred in this District.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

14.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

16.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

17.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

18.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

19.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

20.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

21.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

22.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

23.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

24.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

25.     Under the TCPA, a text message is a call.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## **FACTUAL ALLEGATIONS:**

### **Prior TCPA Lawsuits against Defendants**

26.     Defendant GROUNDED X INC was previously sued for violating the TCPA in 2017 in *Stewart N. Abramson v. Grounded X Inc, et. al*, Case No. AR-17-004192 (Allegheny County Ct. Cmm. Pleas, PA, Sept. 17, 2017).

27.     The Abramson Complaint filed in Allegheny County, Pennsylvania alleged that Grounded X Inc placed illegal telemarketing robocalls to Mr. Abramson in violation of the TCPA.

28.     On November 12, 2017, after Grounded X Inc failed to enter an appearance or otherwise defend the 2017 *Abramson* action, the Pennsylvania Court entered a default judgment against Grounded X Inc in the amount of $12,000.00, which was subsequently satisfied in full in 2021.

29.     The owners of Defendant TR Simpson Enterprises LLC (Timothy Rodgrick Simpson and Nykesha Shameka Simpson) were sued in a separate TCPA action, also by Mr. Stewart N. Abramson, in Pennsylvania in 2018. See, *Stewart N. Abramson v. Restart My Credit LLC, et. al*, Case No. AR-18-002443 (Allegheny County Ct. Cmm. Pleas, PA, Jul. 8, 2018).

30.     The 2018 *Abramson* action in Pennsylvania also involved TCPA claims against Timothy Simpson and his wife, Nykesha Shameka Simpson (owners of Defendant TR Simpson Enterprises LLC) for making illegal robocalls to Mr. Abramson's phone.

31.     On September 18, 2018, the Pennsylvania Court entered a default judgment against Mr. Simpson in the amount of $18,000.00 after Mr. Simpson failed to appear or defend the action. This judgment was subsequently satisfied in 2020.

32.     Despite these prior TCPA actions and civil judgments resulting thereof, Defendants and the human beings that control their operations have taken no steps to comply with the TCPA or state telemarketing laws.

**The Telemarketing Calls to Plaintiff in this Action:**

33.     Plaintiff's personal cell phone number (915) 540-5210 has been successfully registered on the National Do-Not-Call Registry since June, 2021.

34.     Defendants hire and authorize telemarketers to make illegal robocalls to thousands of consumers *en masse* using an ATDS with prerecorded messages to solicit their "debt relief" services.

35.     Defendants approve of the contracts with these telemarketers.

36.     Defendants pay the telemarketers out of bank accounts they own and control.

37.     Defendants approve of the scripts with the prerecorded messages that say they are calling from "Chase Bank."

38.     Obviously, Defendants are not calling from a legitimate institution such as Chase Bank, and are not in any way affiliated with Chase Bank.

39.     Defendants are well aware that the illegal robocalls being made on their behalf soliciting their credit card "debt relief" services violate the TCPA.

40.     Defendants knowingly and willfully violate the TCPA because doing so benefits Defendants financially when consumers sign up for their credit card "debt relief" services.

41.     Defendants process all of their clients' fees through Defendants TR Simpson's and Grounded X's merchant accounts, and upon information and belief, maintain a financial arrangement to split up the profits.

42.     Plaintiff received at least six (6) illegal robocalls to his personal cell phone (915) 540-5210 from or on behalf of Defendants within a three-month period in 2022.

43.     Plaintiff has never had any relationship with Defendants and never knew who Defendants were prior to the illegal robocalls being made to his cell phone.

44.     On February 16, 2022, Plaintiff received a call to his personal cell phone (915) 540-5210

from or on behalf of Defendants from phone number (915) 593-5083.

45.     Plaintiff answered and heard a prerecorded message that stated:

> "Hi, this call is from Chase Bank. We are monitoring your payment history and you have
> been qualified to drop down your interest rate below four percent on your credit card.
> Kindly stay on call to get your confirmation code."

46.     Plaintiff does not have a Chase credit card and could not possibly have been receiving a

call from Chase Bank about his payment history and credit card interest rate.  Therefore, Plaintiff

remained on the call, in order to determine who was robocalling him with prerecorded voice

messages.

47.     There was 3-4 seconds of dead air followed by an audible beep before Plaintiff was

connected to a male representative, indicating the call was made using an ATDS.

48.     The representative then stated, "I think you were responding to the lower interest rate on

your credit card, is that correct?"

49.     The representative advised Plaintiff that based on Plaintiff's payment history and making

his payments on time, he qualified for a lower interest rate of less than six percent.

50.     The representative then collected Plaintiff's credit card information and asked for

Plaintiff's last four digits of his of social security number, and advised Plaintiff he was going to

pull up his last credit card statement.

51.     Plaintiff was then connected to another representative who identified himself as "Daniel

Smith", and said he was a "senior manager."

52.     "Daniel" advised Plaintiff that they were monitoring his profile for the last six (6) to eight

(8) months, and asked if Plaintiff was making his payments on time.

53.     Daniel then solicited Plaintiff for a debt elimination program on behalf of Defendants:

8

"Whatever the balance is right now that you carry on your credit cards it will be forgiving it will be eliminated so you are not responsible to make any more payments on your credit cards for now on the debt that you have on your credit cards will be completely eliminated"

54.     Plaintiff advised Daniel he was interested in the "debt elimination" program for the sole purpose of identifying the companies responsible for the illegal robocalls.

55.     Plaintiff was then connected to another representative who identified himself as "Paul", and said he was a "senior account manager."

56.     "Paul" then stated:

> "Right now as we are working on the credit card account so we do have to make sure to qualify all the cards you have and even if we are giving you a debt elimination right now, and right now this is an implementation by the credit bureaus only for selective consumers and you are one of the consumers who always pay the bills on the credit cards, having a good credit score and a part of that you never filed bankruptcy in the last five years. That is the reason why today you are getting a phone call, otherwise you would have not received the phone call."

> "How about we wipe out the debt in these two cards in six to nine months…" "What we are going to do for you is we are going to eliminate the entire debt, so starting from today's date onward these cards you do not have to pay anymore payments to the credit cards anymore, okay, because these two accounts which you have are going to be closed out and the debt that you have will get eliminated."

> "This will take around six to nine months to eliminate the debt in full. The money that we guys make we make it from the credit card company not the consumers pocket and the money that we guys make that is also going to get eliminated along with the overall balance which you have on the card and we will make that money from Capital One in the amount of $3,500 because that is the cost for the service. But then again you do not have to pay that out of your pocket because this is the amount of the money that is going to get wiped out along with the overall balance what you have on your credit cards, so that is how it is zero dollar out of pocket expense from your side, and that's how we guys get paid for our services."

57.     Plaintiff asked "Paul" if he was going to receive something in writing prior to them charging his credit card and "Paul" stated:

"These lines are highly monitored and recorded by the FTC there is no way that I'm going to let you down alright."

58.     "Paul" advised Plaintiff he was going to transfer him to his "senior project manager". While on hold, Plaintiff received a call from phone number (877) 454-8835 from a female representative named "Maggie Stewart", who said she was his "financial advisor" for debt elimination.

59.     "Maggie" then advised Plaintiff for the next three (3) billing cycles for him to make his credit card payments because it's going to take her about three months to go ahead and do the elimination process of the debt.

60.     "Maggie" then asked Plaintiff if he was aware of the one-time payment of $10,000 and that they were going to take it from Plaintiff's Capital One and the American Express credit cards, and within three (3) months they will have all the debt eliminated.

61.     "Maggie" then advised Plaintiff that the first step would be a validation of the debt and the second step would be looking for violations of any accounts they have over charged. "Maggie" advised Plaintiff he would receive a welcome package and an invoice for him to sign within the next 24-48 hours via email.

62.     On March 2, 2022, Plaintiff received an email from Maggie from maggiestewartcms@gmail.com with an attached welcome letter that contained Defendants American and Grounded X's information, revealing the companies responsible for the illegal robocalls. *See* EXHIBIT "1".

63.     A few minutes later Plaintiff received another email from Defendant TR Simpson from trsimpsonenterspisellc@gmail.com with an attached invoice for $6,500 and a memo that stated:

"Thanks for your business. If you have any questions please contact your rep Jim Mack 855-662-8603. You can also reach him via email jim.mc.tfm@gmail.com"

"Questions? Contact us at trsimpsonenterprisesllc@gmail.com or call us at +1 321-947-4349."

64.     The invoice has Grounded X Inc, with a given address of 910 Spinnaker Way, Kissimmee, Florida 34746 as the biller. *See* EXHIBIT "2".

65.     Maggie confirmed with Plaintiff their website is https://www.consumercredit.com.

66.     On March 16, 2022, Plaintiff received a call to his personal cell phone from or on behalf of Defendants from phone number (915) 543-5477.

67.     Plaintiff answered and heard the same prerecorded message that stated:

"Hi, this call is from Chase Bank. We are monitoring your payment history and you have been qualified to drop down your interest rate below four percent on your credit card. Kindly stay on call to get your confirmation code."

68.     There were 3-4 seconds of dead air followed by an audible beep before Plaintiff was connected to a male representative, indicating the call was made using an ATDS.

69.     The representative said he was from Chase card services, following up on Plaintiff's debt elimination program, thereby confirming it was another robocall made on behalf of Defendants.

70.     Plaintiff received multiple phone calls from telemarketers calling on behalf of Defendants to follow up after Plaintiff advised "Maggie" and every telemarketer, he would call them back if he wanted to proceed with their services.

71.     Plaintiff never gave his prior express written consent to receive any follow up calls from "Maggie" or any telemarketers calling on behalf of Defendants.

72.     The telemarketers are trained by Defendants to pretend to be part of a legitimate credit card member service in an attempt to coax consumers like Plaintiff into falling for their attempts to commit fraud.

73.     Defendants conspire as part of an organized cabal existing to perpetrate fraud on a mass
scale and trick consumers into ruining their credit for promises of becoming debt free while
having their personal credit "restored" and back to having "excellent credit" within six months.

74.     Defendants have approved and adopted a clandestine robocalling operation in which the
Defendants do not ever reveal their true identity until the contract is given at the end of the
process, so that they may charge thousands of dollars to consumers' credit cards.

75.     Defendants and their agents and co-conspirators amassed lists of thousands of potential
customers from public records, and data aggregators, and then placed phone calls using
autodialing technology *en masse* to market their products and services.

76.     Defendants have knowledge of and have adopted and maintained TCPA violations as a
sales strategy. Defendants know full well that offshore telemarketers are robocalling and
harassing consumers in an attempt to procure business on behalf of the Defendants. Defendants
willfully accept these referrals and compensate the telemarketers for their illegal robocalls.

77.     Defendants refuse to take any action to stop or curtail the unlawful sales practices and
robocalling because these practices benefit Defendants financially.

78.     Defendants knew the calls were being directed into the Western District of Texas and the
Defendants knew these actions could cause the Defendants to be summoned into court as a result
of those actions.

79.     Defendants on five occasions used a local area code (915) where Plaintiff resides to trick
him into thinking the calls were from someone local.

80.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendants.

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 02/16/2022 | 2:04PM | 915-593-5083 | Prerecorded voice message then transferred to telemarketer calling on behalf of Defendants |

| 2 | 02/16/2022 | 3:15PM | 877-454-8835 | Call from Maggie while on hold with telemarketer |
| 3 | 02/24/2022 | 2:24PM | 915-540-1911 | Call from rep named Jason on behalf of Defendants to follow up |
| 4 | 03/04/2022 | 4:27PM | 915-540-1109 | Call from rep named Adam on behalf of Defendants to follow up |
| 5 | 03/16/2022 | 2:23PM | 915-543-5477 | Prerecorded voice message then to telemarketer calling on behalf of Defendants. |
| 6 | 04/25/2022 | 2:39PM | 915-580-0153 | Call from Adam on behalf of Defendants to follow up. |

81.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

82.     The Federal Trade Commission ("FTC") says:

"Debt relief service scams target consumers with significant credit card debt by falsely promising to negotiate with their creditors to settle otherwise reduce consumers' repayment obligations. These operations often charge cash-strapped consumers a large up-front fee, but then fail to help them settle or lower their debts – if they provide any service at all. Some debt relief scams even trout their services using automated "robocalls" to consumers on the Do-Not-Call List." Debt Relief and Cred https://www.ftc.gov/news-events/media-resources/consumer-finance/debt-relief-credit-repair-scamsit Repair Scams | Federal Trade Commission (ftc.gov)

83.     The FTC has filed numerous lawsuits in an attempt to combat the proliferation of "Debt Relief" companies committing fraud against American citizens. Numerous states have also begun passing laws to combat this fraud.

84.     Defendants collectively knowingly and willfully mislead Plaintiff with respect to the elimination of his credit card debts.

85.     Defendants violated the Tex. Bus. and Com. Code § 17.46 and committed a deceptive trade practice when it promised to "eliminate" Plaintiff's debt and attempted to collect money upfront in advance of services rendered and earned.

86.     Defendants committed fraud and a deceptive trade practice by requiring payment in

advance of the elimination of their clients' debts.

87.    None of the Defendants are registered pursuant to § 302.101 of the Texas Business &
Commerce Code to provide telephone solicitations. The
https://direct.sos.state.tx.us/telephonesearch.asp website ("Texas Registration Database") does
not contain any of the Defendants' registrations.

88.    None of the Defendants qualify for an exemption under § 302.053.

89.    No emergency necessitated none of the alleged illegal robocalls.

90.    Plaintiff sent an internal do-not-call policy request to Defendant American to via e-mail
to info@consumercredit.com on May 27, 2022 which is the only email listed on their website,
https://www.consumercredit.com.

91.    Despite this e-mail, Defendant American failed and/or refused to send Plaintiff a do-not-
call policy.

92.    Plaintiff sent an internal do-not-call policy request via e-mail to Defendants TR Simpson
and Grounded X to jim.mc.tfm@gmail.com on May 27, 2022, which is an email listed on the
invoice received from Defendants TR Simpson and Grounded X. *See* Exhibit "2".

93.    Defendants TR Simpson and Grounded X failed and/or refused to send Plaintiff a do-not-
call policy.

94.    Upon information and belief, the Defendants did not have a written do-not-call policy
while it was sending Plaintiff the illegal robocalls.

95.    Upon information and belief, the Defendants did not train their agents who engaged in
telemarketing on the existence and use of any do-not-call list.

96.    Such conduct violates the TCPA and its implementing regulations, 47 CFR §
64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

97.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF AMERICAN, TR SIMPSON, AND GROUNDED X

98.     Defendants are vicariously liable for the telemarketing calls that generated the leads on behalf of Defendants.

99.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

100.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

101.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

102.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave

15

consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

103.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

104.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

105.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

106.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

107.    Defendants are legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

16

108.    Defendants knowingly and actively accepted business that originated through illegal telemarketing.

109.    Defendants knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

110.    By hiring a company to make calls on its behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

111.    Moreover, Defendants maintained interim control over the actions of its telemarketers.

112.    For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

113.    Furthermore, Defendants had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS or prerecorded messages to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

114.    Defendants also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

115.    Defendants donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "debt relief" services in the abstract.

116.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

117.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

118.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

119.     Defendants' telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendants. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

120.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

121.     Defendants are the liable parties as the direct beneficiaries of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for a "debt elimination" program on behalf of Defendants.

## DEFENDANTS ARE A COMMON ENTERPRISE

122.     Defendants American, TR Simpson, and Grounded X collectively ("Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and

practices and other violations of law alleged herein.  Defendants have conducted the business practices herein through an interrelated network of companies at the direction of their ownership. Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein.

### The Texas Business and Commerce Code 305.053

123.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

124.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

125.    The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

126.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

127.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

128.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

129.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
AS A RESULT OF THE CALLS**

130.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

131.    Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

132.    Plaintiff has been annoyed, harassed, and irritated by robocalls placed by and/or on behalf of the Defendants.

133.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

**The Plaintiff's Cell Phone is a Residential Number**

134.    The calls were to the Plaintiff's cellular phone (915) 540-5210, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

**CAUSES OF ACTION:**

20

**COUNT ONE:**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

135.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

136.    Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least six (6) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or artificial or prerecorded voice without prior express written consent.

137.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

138.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

139.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice without prior express written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

140.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

141.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

142.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

143.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

144.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

145.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

146.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

      c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

147.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

148.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### COUNT FOUR:
### Violations of The Texas Business and Commerce Code 305.053

149.    Plaintiff incorporates the foregoing allegations as if set forth herein.

150.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

151.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

152.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

### COUNT FIVE:
### (Violations of The Texas Business and Commerce Code 302.101)

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

153.    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

154.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

155.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for six calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.    An award to Plaintiff of damages, as allowed by law under the TCPA;

H.    An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity

I.    Such further relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

June 3, 2022,                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com